FILED
APR 14 2016
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SPV-LS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY, <br><br> Defendant and Third-Party Plaintiff, <br><br> vs. <br><br> NACHMAN BERGMAN, Trustee of the N Bergman Insurance Trust; MALKA SILBERMAN, Successor Trustee of the N Bergman Insurance Trust; LIFE TRADING TRUST; T-LEG LLC (aka TLEG LLC); FINANCIAL LIFE SERVICES LLC; SPV II LLC; and THE REPRESENTATIVE OF THE ESTATE OF NANCY BERGMAN, <br><br> Third-Party Defendants. | CIV 14-4092 <br><br> MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Plaintiff SPV-LS, LLC's motion for summary judgment, Doc. 134. Through the motion, SPV requests this Court find that New York insurance law, as opposed to New Jersey insurance law, applies in the circumstances of this case. For reasons explained herein, New York law is applied and the motion is granted. The facts below were taken, in large part, from a previous Memorandum Opinion and Order of this Court, Doc. 78.

### BACKGROUND

In 2007, Transamerica issued to the N Bergman Insurance Trust, which was established under the laws of New York, a life insurance policy insuring the life of Nancy Bergman, a New York resident, for $10 million (the Policy). The original owner of the policy was The N Bergman

Insurance Trust dated December 18, 2006 (the Trust). In 2007, Nachman Bergman ("Nachman") as trustee of the trust, signed an Application Amendment form as "owner" of the policy. As trustee, Nachman provided a New York address as the primary address at which Nachman was to be contacted. Nachman and Malka Silberman (the trustees) are named in this lawsuit as trustee and successor trustee, respectively, of the Trust. Malka Silberman ("Silberman") is also a New York resident. They aver that Nachman was the original trustee of the Trust until Silberman took over as trustee in 2008.

In 2009, the principal of Financial Life Services (FLS), Michael Krasnerman, began negotiating the purchase of the Policy from the Trust. FLS is registered to do business in New York. Krasnerman thought he was dealing with Nachman, but Nachman denies it was him. In any event, FLS entered into an agreement to purchase the Policy in New York. After executing a purchase agreement, Mr. Krasnerman learned that the Trust had not paid recent premiums, and also that Ms. Bergman's life expectancy was longer than had initially been reported by the Trust. FLS attempted to rescind the contract. A lawsuit was filed against the Trust in the Eastern District of New York. Default was entered after the Trust failed to answer. Ultimately the court directed a sale of the Policy at auction, and the auction was completed in June 2012. FLS submitted the only bid, in the amount of $1,194,522.00. The Policy eventually was transferred to Plaintiff SPV, a Delaware limited liability company owned and controlled by a trust in South Dakota. SPV asserts ownership of the Policy. None of the persons or entities publicly associated with the Policy has a connection to New Jersey. The only connection New Jersey has to this case is in the form of Nancy Bergman's application for the Policy. In the application, the "Application State" is listed as New Jersey. Declaration of Gerald L. Kroll, Doc. 156-2 at 2.

Nancy Bergman died on April 6, 2014. On May 29, 2014, SPV submitted a claim for benefits to Transamerica. Transamerica declined to pay because it received an adverse claim for the proceeds from Silberman. SPV commenced this action on June 13, 2014, alleging a breach of contract claim against Transamerica and demanding payment of the Policy proceeds. On June 17, 2014, Transamerica filed its answer to SPV's complaint and its counterclaim and third-party complaint for statutory interpleader under 28 U.S.C. § 1335, asking this Court to determine the rights of SPV and the third-party defendants to the Policy proceeds. On July 24 and 25, 2014,

Silberman and Nachman admitted service and acknowledged that they needed to file an answer or other response to Transamerica's interpleader complaint no later than August 28, 2014.

On March 30, 2015, this Court entered an Order, Doc. 78, resolving, at least temporarily, the parties' then pending motions, which included a motion for summary judgment, Doc. 19, from SPV. On December 1, 2015, SPV filed a second motion for summary judgment, Doc. 134. In this motion for summary judgment, SPV asks this Court to find that New York law, as opposed to New Jersey law, applies to the facts of this case. According to SPV, under New York law, stranger-originated life insurance policies ("STOLI"), which the Estate of Nancy Bergman (the "Estate") claims the Policy is, are not prohibited. *See*, *infra*, note 3 and accompanying text for the definition of a STOLI. In opposition, the Estate argues that the laws of New York and New Jersey do not conflict and that, under either States' laws, STOLI policies are prohibited. The motion has been fully briefed and the Court will address the issues.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1)(A)-(B). "The movant can also establish the absence of a disputed material fact by showing 'that an adverse party cannot produce admissible evidence to support the fact.'" *Jensen v. Hy-Vee Corp.*, No. CIV. 09-4057-KES, 2011 WL 1832997, at *1 (D.S.D. May 13, 2011) (quoting Fed.R.Civ.P 56(c)(1)(B)). "The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the party seeking summary judgment has met this initial burden, the burden then shifts to the non-moving party who must demonstrate "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P 56(c)(1)(A)-(B). "For purposes of summary judgment, the facts, and inferences drawn from those facts, are 'viewed in the light most favorable to the party opposing the motion.'" *Jensen*, 2011 WL 1832997, at *2 (quoting

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## DISCUSSION

This Court must determine which States' laws apply in this case. In a diversity action, the federal district court applies the choice of law rules of the State in which the court sits. *See Mendonca v. Winckler*, No. CIV 12-5007-JLV, 2013 WL 6528854, at *5 (D.S.D. Dec. 11, 2013) (citing Restatement (Second) Conflicts of Laws § 6(1) (1971)) ("A forum court applies its own conflict of laws rules."); 2004 *Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 232 (S.D.NY. 2009), *affirmed by* 374 Fed.Appx. 78 (2nd Cir. 2010) (citing *Klaxon Co v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)) ("In this diversity action, the Court must apply the choice of law rules of New York, the forum state."). Thus, South Dakota conflicts of laws analysis applies here. First, a court must determine if an actual conflict of laws exists. *Prudential Ins. Co. of America v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). Second, if a conflict does exist, the court then applies the relevant "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *See Burhenn v. Dennis Supply Co.*, 685 N.W.2d 778, 784 (S.D. 2004) (citing *Rothluebbers v. Obee*, 668 N.W.2d 313, 320-21 (S.D. 2003); *Chambers v. Dakotah Center, Inc.*, 488 N.W.2d 63, 68 (S.D. 1992)) ("It is well-settled that South Dakota employs the most significant relationship test when determining choice of law questions."); *Andrews v. Ridco, Inc.*, 863 N.W.2d 540, 554 (S.D. 2015) (quoting *Chambers*, 488 N.W.2d at 67) (noting that, under *Chambers*, "[the South Dakota Supreme Court] adopted 'the most significant relationship approach [of Restatement (Second) of Conflict of Laws § 145] to govern multi-state tort conflicts.'" The *Ridco* court then applied Restatement (Second) of Conflict of Laws § 139's "most significant relationship" test to an attorney-client privilege issue); *Dunes Hospitality, LLC v. Country Kitchen Intern., Inc.*, 623 N.W.2d 484, 488-89 (S.D. 2001) (applying Restatement (Second) of Conflict of Laws § 187 to a dispute stemming from a settlement agreement).

The competing States at issue are New York and New Jersey. SPV argues that New York law applies, which, it argues, does not bar STOLI arrangements, Plaintiff's Brief in Support, Doc. 138, at 2, and the Estate argues that the laws do not conflict; STOLIs are prohibited under either statutory scheme. Third-Party Defendants' Brief in Opposition, Doc. 154, at 7-8. The

4

applicable New York law is New York Insurance Law (NYIL) § 3205(b)(1)-(2), (4).[1] Interpreting NYIL § 3205(b)(1)-(2), the New York Court of Appeals, New York's high court, has held that the owner of a life insurance policy need not have an insurable interest in the person insured. Integrated into NYIL § 3205(b)(1)-(2) is a "common-law rule that a policy valid at the time of procurement may be assigned to one without an insurable interest in the insured's life and, relatedly, no insurable interest is required when one holds a policy in another's life, so long as the policy was 'valid in its inception.'" *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539, 551 (N.Y. 2010) (quoting *Olmsted v. Keyes*, 85 N.Y. 593, 598 (1881)). The *Kramer* decision was in response to a question certified from the United States Court of Appeals for the Second Circuit. The *Kramer* court further explained that NYIL § 3205(b)(1) permits "'a person of lawful age who has procured a contract of insurance upon his or her own life to immediately transfer or assign the contract, and does not require the assignee to have an insurable interest.'" *Id.* (quoting *Hota v. Camaj*, 299 A.D.2d 453, 453 (N.Y. App. Div. 2002)). Thus, under New York law, at the time Nancy Bergman entered into the insurance agreement,[2] an insured was not prohibited from

---

[1] Those sections read, in whole,

> Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

NYIL § 3205(b)(1)

> No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured.

NYIL § 3205(b)(2)

> If the beneficiary, assignee or other payee under any contract made in violation of this subsection receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the person insured, the person insured or his executor or administrator may maintain an action to recover such benefits from the person receiving them.

NYIL § 3205(b)(4)

[2] In 2009, the New York Legislature amended its insurance laws to include a prohibition on STOLI arrangements. *See* NYIL § 7815. *See also, infra*, note 3 for the definition of STOLI. While the new provisions were approved when the *Kramer* opinion was issued, "they [did] not govern [the] appeal" because they were not effective until May 18, 2010. *Kramer*, 15 N.Y.3d at 549 n. 5. *See* N.Y. Stat. Law § 51 (McKinney) ("As a general rule, statutes are to be construed as prospective in operation only, and they are not to receive a retroactive construction. This has been said to be a primary rule of statutory construction. Stated differently, a construction of a statute which will give it a retroactive operation is not favored by the courts, but on the contrary, the laws favors (sic) a prospective interpretation wherever possible. It is well settled also that a statute will not be given a retroactive construction unless an intention to make it retroactive is to be deduced from its wording, and a law will not receive a retroactive construction unless its language, either expressly or by necessary implication, requires that it be so construed. A clear expression of the legislative purpose is required to justify a retrospective application. . . . A postponement of the effective date of a statute, moreover, is some evidence that the Legislature never intended it to be retroactive[.]"). Thus, for purposes of SPV's motion for summary judgment, the Court must evaluate the issues

5

procuring an insurance policy with the intent to immediately assign[3] the policy to someone else, so long as the policy was valid at its inception, i.e., had an insurable interest when first created.

As in New York, under New Jersey law, "an insurable interest [must] exist at the time a life insurance policy is issued." *Lincoln Nat. Life. Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 889 (D.N.J. 2009) (citing N.J.S.A. § 17B:24-1.1(b)[4]). Additionally, New Jersey law, like New York, does permit an insured to transfer ownership of the policy to one lacking an insurable interest. According to a New Jersey federal district court, however, New Jersey law goes a step further: "Insureds begin to run afoul of the insurable interest requirement [] when they intend at the time of the policy's issuance, to profit by transferring the policy to a stranger with no insurable interest at the expiration of the contestability period." *Id.* As of the *Calhoun* decision, however, neither the New Jersey Supreme Court nor the Third Circuit had been faced with similar circumstances. In addition, *Calhoun* predated *Kramer*. Given that, at the time of *Kramer*, both

---

under New York Insurance Law before NYIL § 7815 was effective due to the Policy in issue here being entered into prior to May 18, 2010. *See Berck v. Principal Life Ins. Co.*, 40 Misc.3d 1207(A), at *1 (N.Y. Sup. Ct. 2013) (holding that the events giving rise to the action predated the New York insurance law amendments and the actions were, thus, not barred by New York law). It should be noted that the *Berck* court stated that NYIL § 7815 was effective November 19, 2009. The *Berck* court, however, did not cite *Kramer*, which is a decision of New York's high court. In *Kramer* the New York Court of Appeals stated that, while approved in 2009, NYIL § 7815 was not effective until May 18, 2010. The 2009 New York session laws confirm this date. *See* 2009 Sess. Law News of N.Y. Ch. 499 (S. 66009) (McKINNEY'S). *See also Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2011 WL 4738114, at *7 n. 16 (W.D. Penn. Oct. 5, 2011) (citing the *Kramer* decision, the court notes that the amendment was added in 2009, but not effective until May 18, 2010).

[3] This intent is the essence of a STOLI arrangement:

> In order to execute a STOLI plan, an individual, usually an elderly one, procures life insurance on his or her own life with the intention of subsequently assigning the policy to a third party following the lapse of the policy's contestability period. The insureds are often convinced to engage in these STOLI transactions as a way of obtaining money to be used on medical care. As one court has explained, "[o]ften pejoratively termed stranger-owned life insurance policies these policies enable the insured to obtain ready cash by selling his policy to a stranger whose only interest in the insured is his early demise."

*Lincoln Nat. Life. Ins. Co. v. Schwarz*, No. 09-03361(FLW), 2010 WL 3283550, at *1 (D.N.J. Aug. 18, 2010) (quoting *Lincoln Nat. Life. Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 884-86 (D.N.J. 2009) (internal quotes and citation omitted)) (citations omitted).

[4] That provision reads,

> No person shall procure or cause to be procured any insurance contract upon the life, health or bodily safety of another individual unless the benefits under that contract are payable to the individual insured or his personal representative, or to a person having, at the time when that contract was made, an insurable interest in the individual insured.

N.J.S.A. § 17B:24-1.1(b). In addition, N.J.S.A. § 17B:24-1.1(c) allows an insured to file an action against a party receiving benefits in violation of N.J.S.A. § 17B:24-1.1(b). The provision states,

> If the beneficiary, assignee, or other payee under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disablement, or injury of the individual insured, the individual insured, or his executor or administrator, as the case may be, may maintain an action to recover those benefits from the person so receiving them.

N.J.S.A. § 17B:24-1.1(c).

6

New York's and New Jersey's insurance laws were not materially distinguishable, *compare* NYIL § 3205(b)(2) *with* N.J.S.A. § 17B:24-1.1(b), this Court concludes that the *Calhoun* court would have found *Kramer* persuasive. In fact, in *Calhoun*, the New Jersey district court was comparing the insurance laws of New Jersey and California.[5] In so comparing, the *Calhoun* court noted that both states required that an insurable interest exist at the time of the policy's issuance and that an insured may transfer ownership of the policy to one without an insurable interest. *Calhoun*, 596 F. Supp. 2d at 889. Based on the *Kramer* opinion, New York had the same requirements as New Jersey and California. *See Kramer*, 15 N.Y.3d at 550-51.

The New Jersey district court returned to the same issues it confronted in *Calhoun* in *Lincoln National Life Ins. Co. v. Schwarz*, No. 09-03361(FLW), 2010 WL 3283550 (D.N.J. August 18, 2010). Also predating *Kramer*, the *Schwarz* court compared the laws of New Jersey and New York. Finding the laws of the two states not materially distinguishable, the *Schwarz* court noted that both states (1) required an insurable interest at a policy's inception and (2) permitted an insured to transfer the policy to one without an insurable interest. *Schwarz*, 2010 WL 3283550, at *6. Applying *Calhoun* as to New Jersey law, the *Schwarz* court also concluded that, under both New York and New Jersey insurance law, insureds violate the insurable interest requirement when, at the time of the policy's issuance, the insured intends to transfer the policy to one without an insurable interest. *Id.* For this proposition, the *Schwarz* court cited both the *Calhoun* decision and NYIL § 3205(b)(2) and *Warnock v. Davis*, 104 U.S. 775, 779, 26 L.Ed. 924 (1881) and *New England Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74, 77-78, 538 N.Y.S.2d.

---

[5] For purposes of the motion it was considering, the *Calhoun* court concluded that the insurance laws of New Jersey and California were materially the same. *Calhoun*, 596 F. Supp. 2d at 887 n. 6. Notably, however, a United States District Court for the Central District of California came to the opposite conclusion of the *Calhoun* court regarding an insured's intent at the time of a policy's issuance. *Compare Lincoln Nat. Life. Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882 (D.N.J. 2009) *with Lincoln National Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust (Gordon)*, 638 F. Supp. 2d 1170 (C.D. Cal. 2009). While the New Jersey District Court in *Calhoun* held that an insured's intent at the time of issuance to immediately transfer the policy to one without an insurable interest violates the insurable interest requirement, the *Gordon* court held that it did not. In *Gordon*, the plaintiff insurance company argued that the defendants violated California's insurance laws insofar as the insured had intended to immediately transfer the policy to one without an insurable interest. Finding that this intent did not violate California law, the *Gordon* court held,
> Defendants may have found a loophole in the law barring a STOLI finding, but it is clear to the Court that this whole arrangement with the Fishmans was nothing but a more creative version of the same. Unfortunately for Lincoln, the law as it presently exists allows this kind of insurance arrangement to be valid.

*Gordon*, 638 F. Supp. 2d at 1179. Thus, the viability of *Calhoun's* holding that the laws of New Jersey and California were materially the same was attenuated by *Gordon* insofar as *Calhoun* held that both laws prohibited an insured's intent to transfer a life insurance policy.

7

217, 535 N.E.2d 270 (N.Y. 1989). *Warnock* was relied upon by the dissenters in *Kramer*. The *Schwarz* conclusions as to New York law are dicta as New Jersey law was applied for the holding. Based on *Kramer*, however, it is plain that the New York Court of Appeals would have found otherwise. *See Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2011 WL 4738114, at *7 (W.D. Penn. Oct. 5, 2011) (quoting *Kramer*, 15 N.Y.3d at 542) (holding that the Pennsylvania Supreme Court would have found *Kramer* persuasive and held that it is "not the role of the judiciary 'to engraft an intent or good faith requirement' onto a statute that explicitly allows an insurer to freely transfer his or her policy."). *Schwarz's* conclusion pertaining to New York law is, therefore, erroneous, and in addition, it is dicta.

While the *Calhoun* and *Schwarz* courts found the intent to immediately transfer a policy violated the principle that an insurable interest must exist at the time of the policy's issuance, this Court finds *DeRose* and *Kramer* more persuasive. It is not, however, a question of which conclusion is more persuasive. Instead, New York Law is applicable, and *Kramer* states the controlling New York law. In *DeRose*, the Pennsylvania district court noted that it was

> acutely aware of the law's general distaste for wager policies and recognize[d] the importance of the insurable interest doctrine. The court note[d] that this decision [did] not vitiate the statutory requirement that an insurable interest exist at the time of inception or that the insured must apply for the policy. There may or may not be a fundamental difference between persons with an insurable interest using life insurance policies as a financial planning mechanism by immediately assigning the policies to third parties and direct wagering by third parties with no insurable interest. It is the job of the Pennsylvania General Assembly, however, and not this court to weigh the competing policy considerations. Neither this court nor the Pennsylvania Supreme Court can engraft an intent or good-faith requirement onto § 512 based on its own policy preferences.

*DeRose*, 2011 WL 4738114, at *7 n. 17 (citation omitted). Likewise, in *Kramer*, the New York Court of Appeals held,

> There is simply no support in the statute for plaintiff and the insurers' argument that a policy obtained by the insured with the intent of immediate assignment to a stranger is invalid. The statutory text contains no intent requirement; it does not attempt to prescribe the insured's motivations. To the contrary, it explicitly allows for "immediate transfer or assignment" (Insurance Law § 3205 [b] [1]). This phrase evidently anticipates that an insured might obtain a policy with the intent of assigning it, since one who "immediately" assigns a policy likely intends to assign it at the time of procurement.

8

*Kramer*, 15 N.Y.3d at 551.

Most importantly, through its research, this Court finds that the insurance laws of New Jersey, Pennsylvania, and California were comparable to New York's at the time relevant to the action pending in this Court. *See Lincoln National Life Ins. Co. v. Schwarz*, No. 09-03361(FLW), 2010 WL 3283550 (D.N.J. August 18, 2010); *Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2011 WL 4738114 (W.D. Penn. Oct. 5, 2011); *Lincoln National Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust (Gordon)*, 638 F. Supp. 2d 1170 (C.D. Cal. 2009). *See also*, *supra*, note 5 and accompanying text; N.J.S.A. § 17B:24-1.1(b)-(c); NYIL § 3205(b)(2), (4). It was only the New Jersey district court in *Calhoun*, however, that found that the New Jersey Supreme Court would hold that New Jersey insurance law barred the intent, at the time of a policy's issuance, to transfer the policy to one without an insurable interest. *See Lincoln Nat. Life. Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882 (D.N.J. 2009). This Court finds that, had the New York Court of Appeals' decision been issued in *Kramer*, the *Calhoun* court would have come to the same conclusion as *Kramer*. Even if the *Calhoun* court had not been so persuaded, this Court disagrees with *Calhoun* and further finds that, at the time of the events giving rise to this action, the laws of New York and New Jersey were not materially distinguishable and, thus, neither of them prohibited an insured to intend, at the time of a policy's issuance, to immediately transfer the policy to one without an insurable interest. *See Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539, 551 (N.Y. 2010); N.J.S.A. § 17B:24-1.1(b); NYIL § 3205(b)(2).

Therefore, on the narrow issue of whether or not STOLI arrangements are prohibited, no conflict exists between the laws of New York and New Jersey.[6] On this issue, it need not be explicitly decided which States' laws apply because the outcome will be the same under either States' insurance laws. *Kamrath*, 475 F.3d at 924 (citing *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436 (N.Y. 1998)) ("We need not decide whether Missouri law or New York law applies in this case because the outcome would be the same under either law."). The Estate itself concedes this point. Third-Party Defendants' Brief in Opposition, Doc. 154, at 7 ("Subdivision c of New Jersey Insurance Law § 17B:24-1.1 is virtually identical to N.Y. Ins. Law § 3205(b)(4). In other words, there is no conflict between the law of New Jersey and the law of New York.").

---

[6] Even if the Court were to find that the laws of New York and New Jersey conflicted, it holds that New York law controls in that New York has the most significant relationship with this case. *See* discussion of choice of law, *infra*.

9

In fact, the Estate, in light of *Kramer*, makes the same flawed argument that the *Schwarz* court observed: That, under New York insurance law, an insured cannot, at the time of a policy's issuance, intend to immediately transfer the policy to one without an insurable interest. *See* Third-Party Defendants' Brief in Opposition, Doc. 154, at 7-8. *See also Gordon*, 638 F. Supp. 2d at 1178-79 & n. 3 (noting that the plaintiff was actually asking the court to ignore the validly formed life insurance policy "and examine the intent of the parties in entering into the agreement in the first instance."). Under either New York or New Jersey law, (1) an insurable interest must exist at a policy's inception and (2) insureds are permitted to transfer the policy to one without an insurable interest. *Kramer*, 15 N.Y.3d at 551; *Schwarz*, 2010 WL 3283550, at *6. Here, beginning in 2007, the Trust owned the Policy, with Nachman as the Trustee and Beneficiary. Furthermore, Nachman, as Nancy Bergman's grandson, had an insurable interest in Nancy Bergman's life. It was not until 2009 that the Policy was claimed to be owned by the "stranger," FLS. The record shows, however, that the Policy was entered into with the intent to sell the policy and its benefits. The above analysis is to demonstrate that the result would be the same under New Jersey law, although the conclusion is reached on the basis of applicable New York law.

The Court's determination of choice of laws will affect other issues in this case. While the Estate argues that the Policy contains a choice of law provision designating New Jersey law as controlling and, as such, further choice of law analysis is unnecessary, the Court is unpersuaded. Here, the Court is not being asked to interpret the Policy. In other words, the Court is not interpreting any claim of coverage under a provision of the Policy. Instead, the Court is being asked to consider an agreement between Nachman, as Trustee of the Trust, and FLS for the sale of the Policy to FLS. Thus, any choice of law provision in the Policy has no effect on this Court's decision. *See Prudential Ins. Co. of Am. v. Kamrath*, No. 4:03-CV-1736 (CEJ), 2006 WL 416156, at *9 (E.D. Mo. Feb. 21, 2006) (finding that a choice of law provision was inapplicable as the dispute did not involve the interpretation of the policy in issue), *aff'd* 475 F.3d 920 (8th Cir. 2007).[7] Under the applicable "most significant relationship" test of the Restatement (Second) of Conflict of laws,

---

[7] It should be noted that while the Eighth Circuit affirmed the district court in *Kamrath*, the Circuit Court declined to rule on which States' laws in issue controlled because it found that no conflict existed. Therefore, the Eighth Circuit

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971). *See Dunes Hospitality, LLC v. Country Kitchen Intern., Inc.*, 623 N.W.2d 484, 488-89 (S.D. 2001) (applying Restatement (Second) of Conflict of Laws § 187 to a dispute stemming from a settlement agreement containing a choice of law provision). The principles to be considered under § 6 are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

---

did not comment on whether or not the choice of law provision would have had any effect were the laws to actually conflict. *Kamrath*, 475 F.3d at 923-24. In any event, this Court agrees with the district court's conclusion in *Kamrath* regarding the inapplicability of the choice of law provision to the issues presented.

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Regarding the § 188 contacts, the place of contracting between Nachman and FLS was New York. Krasnerman negotiated the purchase of the Policy from the Trust, all of which took place in New York. In that the Trust was created in New York and FLS was licensed to do business there, the place of performance, i.e., the sale of the Policy, also took place in New York. The subject matter of the contract, again, the Policy, was held by the Trust in New York. Finally, at the time of contracting between the Trust and FLS, the parties involved all resided in New York.

As to the § 6 principles, the needs of the interstate system favor application of New York law. The residences of the parties involved and the location of the Trust and the Policy are all in New York. Insofar as New Jersey's only connection to the issues is the inapplicable choice of law provision, the interstate system would be better promoted by an application of New York law. Likewise, New York has the greatest interest in applying its policies in this case. In fact, as noted above specific to the insurance laws, the policies of New York and New Jersey do not conflict. In any event, the agreement between the Trust and FLS took place in New York. In addition, the parties involved are predominately New York residents. As such, most, if not all, of the evidence in this case will be found in New York and New York has a greater interest in applying it policies to its residents and business licensees. Next, FLS had a justified expectation that the agreement would be carried out in New York. The Trust owned the Policy, both of which were located in New York. FLS, licensed to do business in New York, negotiated the sale of the Policy from Nachman, a New York resident. Thus, it appears to the Court that the parties would have been justified in expecting that the agreement would take place in New York and New York laws would apply were a dispute to arise. Finally, the ease of certainty, predictability and uniformity of result are seemingly neutral in this case. *See Winckler*, 2013 WL 6528854, at *9. Both New York and New Jersey law are easily determined and applied. Ultimately, insofar as the only connection New Jersey has to the issues presented is in the form of the inapplicable

choice of law provision in the Policy, New York has the most significant relationship to this case and its laws, therefore, control.

## CONCLUSION

The insurance laws of New York and New Jersey were not materially distinguishable at the time of the events giving rise this federal action. Under either N.J.S.A. § 17B:24-1.1(b)-(c) or NYIL § 3205(b)(2), (4), an insured would not have been prohibited from intending, at the time of a life insurance policy's issuance, to immediately transfer the insurance policy to one without an insurable interest in the insured's life. Even if the Court found that the laws of New York and New Jersey conflicted, it finds that New York law controls. New York has the most significant relationship with this case and New York law, therefore, controls the remaining issues presented. In summary, the record demonstrates that the policy in question was a STOLI from the beginning. New York law is applicable to this lawsuit. Under New York law at the time of the inception of this life insurance policy, STOLIs were not prohibited. As a result, the Trust could "sell" the policy and its proceeds.

IT IS ORDERED that Plaintiff SPV-LS, LLC's motion for summary judgment, Doc. 134, is granted dismissing the claims to policy proceeds asserted by Third Party Defendant Representative of the Estate of Nancy Bergman.

Dated this 14th day of April, 2016.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk
BY: *Summer Wahufrd* [signature]
Deputy