UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SPV-LS, LLC,<br><br>     Plaintiff,<br><br> vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>     Defendant and Third-<br>     Party Plaintiff,<br> vs.<br><br>NACHMAN BERGMAN, as Trustee of The N Bergman Insurance Trust dated December 18, 2006; MALKA SILBERMAN, as Successor Trustee of The N Bergman Insurance Trust dated December 18, 2006; LIFE TRADING TRUST, dated August 8, 2007; T-LEG, LLC, a/k/a TLEG LLC; FINANCIAL LIFE SERVICES, LLC; SPV II LLC; and THE REPRESENTATIVE OF THE ESTATE OF NANCY BERGMAN,<br><br>     Third-Party<br>     Defendants. | 4:14-CV-04092-LLP<br><br><br><br><br>ORDER ON PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTIONS TO COMPEL ATTORNEYS PAMELA REITER AND RONALD PARSONS TO COMPLY WITH SUBPOENAS<br><br>DOCKET NO. 255 |

## INTRODUCTION

   This diversity matter is pending before the court on the complaint of plaintiff SPV-LS, LLC.  See Docket No. 1.  Plaintiff and third-party defendants Life Trading Trust, Financial Services, LLC, and SPV II LLC (collectively the Krasnerman Entitites), served on Sioux Falls, South Dakota, attorneys Pamela Reiter and Ronald Parsons subpoenas *duces tecum* seeking the production of "all retainer

agreements, invoices, proof of payments, and non-privileged client communications with respect to your representation of the N. Bergman Insurance Trust, Nachman Bergman, Malka Silberman, and/or the Estate of Nancy Bergman in any proceeding involving life insurance on the life of Nancy Bergman." See Docket No. 257-1 at p. 3, 8.  Both attorneys objected to the subpoenas.  The Krasnerman Entities then filed a motion to compel the attorneys to comply with the subpoenas.  See Docket No. 255.

The district court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for decision.  See Docket No. 276.  This court has authority to rule on the motions pursuant to the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge, and 28 U.S.C. § 636(b)(1)(A).

## FACTS

A thumbnail sketch of the facts of this action, recited only to provide context for discussion of the discovery disputes, is as follows.  Nancy Bergman, a school teacher of modest means, obtained a $10 million life insurance policy on herself from defendant Transamerica Life Insurance Company and placed that policy into the N. Bergman Insurance Trust dated December 18, 2006.[1] Nancy's grandson, third party defendant Nachman Bergman, was the beneficiary and trustee of the trust.  Allegedly, Malka Silberman took over as trustee of the trust in 2008, though that is a disputed fact.  Transamerica

---

[1] Nancy also apparently obtained a $5 million insurance policy on her life from another insurer, Sun Life Assurance Company, and also placed that policy into a trust.  That policy is not part of this District of South Dakota litigation. Separate litigation concerning the Sun Life policy is pending in the District of New Jersey.  See Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A. as Securities Intermediary, 3:14-CV-05789-PGS-LHG (D.N.J.).

claims it was never notified of the change in the identity of the trustee until after Nancy's death in 2014.

Nancy also apparently obtained a $5 million insurance policy on her life from another insurer, Sun Life Assurance Company, and also placed that policy into a trust. That policy is not part of this District of South Dakota litigation. Separate litigation concerning the Sun Life policy is pending in the District of New Jersey. See Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A. as Securities Intermediary, 3:14-CV-05789-PGS-LHG (D.N.J.).

Regarding the Transamerica policy at issue in this litigation, in 2009, Nachman is alleged to have sold the insurance policy from the N. Bergman trust to FLS. After the sale, FLS discovered that the premiums on Nancy's life insurance policy had not been paid. It also discovered that Nachman's representations that Nancy was on death's doorstep were inaccurate. Nachman, for his part, denies that he ever entered into these transactions with FLS, suggesting an imposter posing as Nachman dealt with FLS. He claims someone forged his signature to the pertinent sale documents involving FLS.

FLS brought suit against the trust in federal district court for the Eastern District of New York. Default was entered against the trust because it never answered. Thereafter, an auction of Nancy's life insurance policy was held in 2012. FLS bought the policy at the auction for $1.19 million. FLS then transferred the policy to the plaintiff herein, SPV-LS, LLC.

On April 6, 2014, Nancy died. Thereafter, both SPV-LS, LLC and Malka Silberman on behalf of the trust, submitted claims to Transamerica for the

policy proceeds.  SPV-LS, LLC brought this suit against Transamerica in this court, alleging a claim of breach of contract.  Transamerica interpleaded the policy proceeds and sued Nachman, Ms. Silberman, Nancy's estate, and other third-party defendants, alleging that Transamerica was unable to determine which of the claimants was legitimately entitled to the proceeds of the policy.

A series of lawyers in New York have allegedly represented the trust, though Ms. Silberman now claims she never hired these New York lawyers.  In this litigation, a succession of lawyers have made appearances on behalf of Ms. Silberman.  First attorneys Pamela Reiter and Ronald Parsons appeared. They withdrew after thirteen months.  Then after a month's lapse, Matthew Dorothy appeared.  Mr. Dorothy withdrew less than five months later.  Andrew Citron of New York purported to represent Ms. Silberman and communicated with counsel for other parties in that capacity (see Docket No. 198), but Mr. Citron never formally entered a notice of appearance in this case.  On April 8, 2016, Aaron Twersky of New York City and James Moore, as local counsel, noticed their appearance on behalf of Ms. Silberman.  The estate of Nancy Bergman has been represented from September 18, 2015, until the present by Mr. Donahoe and Mr. Kroll.

A number of subpoenas *duces tecum* were issued to lawyers in connection with the litigation surrounding the life insurance policies on Nancy Bergman.  In the New Jersey litigation, the attorneys for Sun Life served Sioux Falls attorney Pamela Reiter (fka Bollweg) with a subpoena *duces tecum* requesting documents relating to any life insurance policy on Nancy Bergman's

life.  See Sun Life Assurance Co. of Canada v. Wells Fargo Bank N.A. as Securities Intermediary, 4:15-mc-00116-KES, Docket No. 1-1 (D.S.D.).  Ms. Reiter moved to quash the subpoena and for a protective order, asserting the documents requested were protected by the attorney-client privilege or the work product doctrine.  Id. at Docket No. 1.  Judge Schreier denied the motion to quash and denied the request for a protective order, holding that Ms. Reiter had not demonstrated that the documents were protected.[2]  Id. at Docket No. 7.

In this litigation, the Krasnerman Entities served subpoenas *duces tecum* on three New York attorneys, Nelson Bloom, Stuart Davis, and Andrew Citron, who either had previously represented Malka Silberman or the N. Bergman Trust, or who were alleged to have done so.  See In re:  Rule 45 Subpoenas Issued to Nelson Bloom, Stuart Davis, and Andrew Citron, 1:16-mc-00156-P1 (S.D.N.Y.).  Those attorneys resisted the subpoenas on grounds of attorney-client privilege and work product doctrine.  The Krasnerman Entities moved to compel compliance with the subpoenas in federal district court for the Southern District of New York.[3]  The Honorable Katherine B. Forrest, District

---

[2] The proper forum for a motion to compel compliance with a subpoena, or for a motion to quash a subpoena, is the district court where compliance with the subpoena is required.  See FED. R. CIV. P. 45(d)(2)(A)(i) and (d)(3).  Because the subpoena issued in connection with the District of New Jersey case required compliance in the District of South Dakota, the motion to quash was properly venued here.  Id.

[3] Because the subpoenas required compliance in New York, the proper forum for a motion to compel compliance with the subpoenas was New York. See Footnote 2, *supra.*

Judge, found the documents requested were not protected and ordered the three attorneys to comply with the subpoenas.  Id. at Docket No. 20.

The Krasnerman Entities also served Sioux Falls attorneys Matthew Dorothy and Alan Peterson with subpoenas *duces tecum*.  Those two attorneys voluntarily complied with the subpoenas, asserting attorney-client privilege and work product doctrine arguments as to only a portion of the documents requested in the subpoenas.  The Krasnerman Entities filed motions to compel further compliance with those subpoenas.  See Docket Nos. 258 & 261.  The court ordered both attorneys to provide additional documents responsive to the subpoenas.  See Docket Nos. 309, 310 & 321.

The Krasnerman Entities also served Pamela Reiter and Ronald Parsons with the subpoenas *duces tecum* which are the subject of the instant motion to compel.  Ms. Reiter and Mr. Parsons served as counsel of record for third-party defendants Nachman Bergman and Malka Silberman in this case from September 25, 2014, until October 20, 2015.  See Docket Nos. 41, 42 & 111.  Both attorneys resist the subpoenas on the basis of attorney-client privilege and work product doctrine.  See Docket No. 303.  The court analyzes the issues below.

## DISCUSSION

### A.    Rule 45

Rule 45 of the Federal Rules of Civil Procedure provides the procedure for serving subpoenas on nonparties.  See FED. R. CIV. P. 45(a) and (b).  The same rule also describes by what procedure a nonparty served with a subpoena may assert

6

an objection to that subpoena.  See FED. R. CIV. P. 45(d)(2)(B).  Objections to producing documents pursuant to a subpoena must be served on the party issuing the subpoena within 14 days after the subpoena is served or prior to the time specified for compliance with the subpoena.  Id.  After an objection is made, the party which issued the subpoena may bring a motion for an order compelling compliance with the subpoena.  See FED. R. CIV. P. 45(d)(2)(B)(i).

Rule 45 specifies what is required if a party withholds subpoenaed documents under a claim that it is privileged or subject to protection as trial-preparation material.  See FED. R. CIV. P. 45(e)(2)(A).  The party must (1) expressly make the claim of privilege and (2) describe the nature of the documents being withheld in such a manner that does not reveal information that is privileged or protected, but which allows the parties to assess the claim of privilege.  Id.

**B.      Pamela Reiter and Ronald Parsons Subpoena**

Attorneys Reiter and Parsons were served with identical subpoenas.  They did not produce any documents in response to the subpoena.  They did, however, in a joint objection to the subpoena, provide a privilege log.  That log consists of a list of 19 separate documents together with a name of each document, the recipient of each document, the date of each document, and the objection to producing each document.  Every one of the 19 documents listed has the exact same objection listed:  "attorney-client privilege, work product, client confidentiality." See Docket No. 257-6 at p.6.

**1.      Bank Records**

Two of the items listed in the privilege logs are payments to the Johnson Law Firm from First Bank and Trust dated October 14, 2014, and May 15, 2015.

Id. These documents are not protected.  They are not authored by either the lawyers or their clients, but by a third party in the ordinary course of business. Since the author is a bank, there can be no trial strategy or research from the attorney reflected in the documents.  For the same reason bank documents relative to the subpoena issued to Matthew Dorothy were ordered to be produced as non-privileged, the court orders Ms. Reiter and Mr. Parsons to produce these bank documents.  The account number and any other sensitive information may be redacted so long as the documents produced accurately reflect the payor and payee of the payment.

### 2.   Retainer Agreement

The retainer agreement was sent to clients Malka Silberman and Nachman Bergman on September 24, 2014.  The court believes it highly unlikely in the extreme that any attorney trial strategy or research or anything else remotely akin to attorney work product is reflected in this document.  "Client confidentiality" is not a valid basis for refusing to produce otherwise relevant discovery.  That leaves attorney-client privilege as a potential basis for withholding the retainer agreement.

In a diversity case such as this, state law controls the question of attorney-client privilege.  Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000). The party asserting the privilege has the burden of demonstrating a factual basis for the privilege.  State v. Rickabaugh, 361 N.W.2d 623, 624 (S.D. 1985).  To establish the privilege applies, four elements must be established:  (1) a client, (2) who made a confidential communication, (3) to facilitate the rendition of professional legal services to the client, (4) between the client and the attorney.

8

Nylen v. Nylen, 873 N.W.2d 76, 79 n.1 (S.D. 2015).  Absent unusual

circumstances, fee agreements between lawyer and client have been held not to

come within the attorney-client privilege in South Dakota.  See Matter of Discipline

of Rensch, 333 N.W.2d 713, 715-16 (S.D. 1983) (citing Hedges v. Hedges, 209

N.W.2d 660 (S.D. 1973); Higgs v. Bigelow, 164 N.W. 89 (S.D. 1917)).

Here, Ms. Reiter and Mr. Parsons have not carried their burden of showing

why their retainer agreement comes within the purview of the attorney-client

privilege instead of coming within the purview of the normal rule that fee

agreements are generally not privileged.  The retainer agreement must be produced

pursuant to the subpoena.

### 3. Invoices

Invoices, like fee agreements, are generally not protected by the attorney-

client privilege.  Brennan v. Western Nat'l. Mut. Ins. Co., 199 F.R.D. 660, 662

(D.S.D. 2001).  As with the retainer agreement, the conclusory assertion of

attorney-client privilege as to the invoices which are responsive to the Krasnerman

Entities' subpoena is insufficient to establish the application of the privilege to the

invoices.  Since it is Ms. Reiter and Mr. Parsons' burden to demonstrate

application of the privilege, the court holds they have not carried that burden as to

the invoices.

While questions of attorney-client privilege in diversity actions are controlled

by application of state law, the application of the attorney work product doctrine is

controlled by federal law.  Brennan, 199 F.R.D. at 662.  The work product doctrine

excludes from discovery those "documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its representative"

9

and which reveal the attorney's thought processes and legal recommendations. Lamar Advertising of S.D., Inc. v. Kay, 267 F.R.D. 568, 575 (D.S.D. 2010).  In legal invoices, entries which "reveal the motive of the client in seeking representation, litigation strategy, or . . . researching particular areas of the law" do fall within the work product doctrine.  Brennan, 199 F.R.D. at 662.  Entries on legal bills which do not reflect the attorney's thought processes or advice do not fall within the doctrine.  Id.

Here, Ms. Reiter and Mr. Parsons have asserted the entirety of each of their invoices fall within the work product doctrine.  However, that doctrine cannot shield the entirety of those invoices.  Entries on the invoices which do not reveal any attorney trial strategy or recommendation are not protected.  Id.  The privilege may be asserted and applied only to those portions of the invoices which show work product.  For example, "review pleading" or "phone call to client" are not protected by the doctrine because they do not reveal trial strategy.  Nor do payments from third parties reflected on the invoice fall within the doctrine.  An attorney's time entry reflecting researching a particular issue or claim, especially one being considered but not yet asserted in the lawsuit, would reveal trial strategy.

The court orders the invoices listed in the privilege log to be produced. However, Ms. Reiter and Mr. Parsons may make redactions from their invoices pursuant to the work product doctrine if a particular entry on the invoice reveals their thought processes and strategy.  A privilege log must be provided for all redactions, one that is not conclusory and identical as to each such redaction.

**CONCLUSION**

Based on the foregoing law, facts, and analysis, the court hereby

ORDERS that the motion to compel [Docket No. 255] filed by Plaintiff and

third-party defendants Life Trading Trust, Financial Services, LLC, and SPV II LLC

is granted in part and denied in part as follows:

1.      Attorneys Reiter and Parsons shall, within 15 days from today's date,

provide the bank records listed at the bottom of their privilege log to the

Krasnerman Entities.  Account numbers and other sensitive data may be redacted.

2.      Attorneys Reiter and Parsons shall, within 15 days from today's date,

provide their retainer agreement to the Krasnerman Entities.

3.      Attorneys Reiter and Parsons shall, within 15 days from today's date,

provide their invoices to the Krasnerman Entities.  Ms. Reiter and Mr. Parsons

may make any partial redactions necessary to shield their trial strategy and

recommendations that are reflected in discrete entries on the invoices.  A privilege

log shall accompany the invoices that individually addresses each redaction.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of

this order before the district court upon a showing that the order is clearly

erroneous or contrary to law.  The parties have fourteen (14) days after service of

this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an

extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. §

636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to

appeal questions of fact.  Id.  Objections must be timely and specific in order to

require review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED July 15, 2016.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge