Case 4:14-cv-04092-LLP   Document 451   Filed 12/08/16   Page 1 of 6 PageID #: 12524



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SPV-LS, LLC, | CIV 14-4092 |
| Plaintiff, | |
| vs. | ORDER ON MOTION FOR RECONSIDERATION (Doc. 245) |
| TRANSAMERICA LIFE INSURANCE COMPANY, | |
| Defendant and Third-Party Plaintiff, | |
| vs. | |
| NACHMAN BERGMAN, as Trustee of The N Bergman Insurance Trust dated December 18, 2006; MALKA SILBERMAN, as Successor Trustee of The N Bergman Insurance Trust dated December 18, 2006; LIFE TRADING TRUST, dated August 8, 2007; T-LEG, LLC, a/k/a T-LEG LLC; FINANCIAL LIFE SERVICES, LLC; SPV II LLC; and THE REPRESENTATIVE OF THE ESTATE OF NANCY BERGMAN, | |
| Third-Party Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In a previous opinion this Court held that New York rather than New Jersey law applied to this dispute. The Court further held that the ten million dollar ($10,000,000) life insurance policy in question on the life of Nancy Bergman was a stranger-originated life insurance policy ("STOLI") and when the policy was obtained in 2007, STOLIs were not prohibited under New York law. The New York legislature subsequently prohibited STOLIs in 2009. This Court then entered summary

judgment in favor of SPV dismissing the claims to policy proceeds asserted by Representatives of the Estate of Nancy Bergman ("Estate"). The Estate then moved under FED. R. CIV. P. 54(b) for reconsideration and to allow further discovery and to avoid a manifest injustice.

Although there was little showing by the Estate as to what discovery might yield to show a manifest injustice or some other basis for relief, the Court was concerned that there had been many allegations but little discovery, so discovery was allowed to proceed as to all parties. Discovery is now closed.

The Estate now claims that no attention was given in the prior opinion to the question of an insurable interest. That claim was addressed in the previous opinion.

The Estate also claims that there was undue influence and coercion brought to bear on Nancy Bergman. The Estate also claims that Nancy Bergman did not know that she was applying for life insurance. All of the testimony from family members and an examining medical doctor is to the contrary. The record shows that Nancy Bergman was an 82 year old retired school teacher who was "sharp" and independent in 2007 and 2008 and well knew what was going on about her. Nancy Bergman was not knowledgeable about life insurance, but her grandson, Nachman Bergman, testified that she knew she was applying for life insurance policies. Nancy Bergman was also aware that she underwent at least one life insurance physical from a medical doctor.

There are a total of five life insurance policies involved in this scheme. The policies, each from a different life insurance company and on the life of Nancy Bergman, total $37,000,000 in life insurance benefits. Nachman Bergman got his grandmother into this scheme and had her sign various documents that others completed. Some of those documents made gross misrepresentations as to Nancy Bergman's annual income and net worth so that the life insurance companies would be duped into writing the requested life insurance policies. There is no evidence that Nancy Bergman knew of those misrepresentations although she knew she was signing life insurance applications with blanks for information. In addition, Nachman Bergman testified that as to the Transamerica policy

in question, it was represented to Nancy Bergman that it was for a million and a half so that it would appear to make more sense to Nancy Bergman.

For his efforts on these five policies, Nachman Bergman testified that he received approximately $130,000. Nachman Bergman also testified that Nancy Bergman got about $50,000 from her participation in all five (5) policies. Although there are no documents to support the understanding, Nachman Bergman testified that it was his understanding that Nancy Bergman would get ten percent (10%) of the proceeds if a policy was sold and if not sold, then when Nancy Bergman died, her estate would get ten percent (10%) of the policy proceeds. There was also testimony from Nachman Bergman that if payment was accepted early the payment would be smaller. The Court speculates that may have been what happened. It is clear that Nancy Bergman was being used in the scheme as she was an older person in good health who could be issued a life insurance policy, but it is also clear that she was a willing if not a knowledgeable participant.

The Estate claims that the limited consideration for Nancy Bergman's participation precluded the finding of an insurable interest. The Estate cites *Warnock v. Davis*, 104 U.S. 775 (1881) and *Grigsby v. Russell*, 222 U.S. 149 (1911) to support the Estate's claim that "It has been the law for over 100 years that a ten percent (10%) interest in life insurance policy benefits does not constitute insurable interest; a pre-agreement whereby a stranger gets ninety percent (90%) of the policy benefits is invalid as against policy because the policy lacks insurable interest." (Estate Doc. 426 at 3)

That claim is not the law, nor is it applicable to this case for more than one reason. To begin with, *Grigsby* acknowledged *Warnock* and overruled *Warnock*. *Warnock*, in recognizing an opposite view to its holding, acknowledged that the New York Court of Appeals held that a policy of insurance is assignable like an ordinary chose in action. In *Grigsby*, Dr. Grigsby bought the policy and had no interest in the life of the assured. The assured's estate sued and Justice Holmes writing for the Supreme Court held against the estate. There was no discussion of whether the $100 paid plus the undertaking to pay the premiums due or to become due was inadequate so as to preclude Dr.

Grigsby's claim to policy proceeds. The *Grigsby* court noted that the Tennessee Supreme Court, where the assignment was made, came to the same conclusion. No ten percent (10%) or any percent rule comes from those Supreme Court cases. In any event, this question is a matter of state law and the legislature and the courts of New York have provided the answer.

As this Court previously held in its April 14, 2016 opinion the controlling case is *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539 (N.Y. 2010) where that court explained that NYIL § 3205(b)(1) permits "any person of lawful age who has procured a contract of insurance upon his or her own life to immediately transfer or assign the contract, and does not require the assignee to have an insurable interest." *Kramer* at 541. The *Kramer* court also held at 540 that:

> This freedom of assignment is not limited by section 3205(b)(2), which addresses procurement of an insurance policy on another's life, either "directly or by assignment," because section 3205(b)(2) requires an insurable interest only "at the time when such contract is made," that is, when such insurance is initially procured."

Whether allowing STOLIs was good public policy was for the New York legislature to decide. The New York legislature did prohibit STOLIs in 2009, NYIL § 7815, but that is too late to have application to this case.

The Estate also urges that a manifest injustice should be prevented by the application of FED. R. CIV. P. 60(b)(6). The discovery in this case has simply not shown circumstances so unusual or compelling that extraordinary relief is warranted, or where it offends justice to deny such relief. The case was filed on June 13, 2014, and the Third-Party Defendants including the Estate were added on June 17, 2014. Summary judgment against the claims of the Estate was entered on April 14, 2016. Upon motion, discovery by all parties was allowed to proceed until September 16, 2016 with that deadline being extended for the taking of Nachman Bergman's deposition.

Subsequent discovery did add detail to the sordid series of events that resulted in the issuance of the five (5) life insurance policies with a face value of $37,000,000. Discovery also revealed that Nancy Bergman received about $50,000 for her participation while at the same time she never paid

any of the hundreds of thousands of dollars in premium paid, nor is there any showing that she ever believed she would have to pay any premiums even if she could have. The evidence shows that Nancy Bergman did not come up with this scheme but the evidence also shows that as a "sharp" and independent 82 year old former school teacher, even though not knowledgeable on insurance, but knowing that she was getting life insurance, and that she was getting paid up front for getting the life insurance. There is no manifest injustice which would warrant setting aside the summary judgment previously entered. Instead, as a whole, subsequent discovery only confirms that under the then-existing New York law, summary judgment on the Estate claims is appropriate.

The Estate also argues that the New Jersey decision of *Sun Life Assurance Company of Canada v. Wells Fargo Bank, N.A.*, Civil Action No. 14-5789 (D.N.J. 2016) should be considered. In that case under New Jersey law the District Court considered a $5,000,000 policy on the life of Nancy Bergman that was obtained in this same scheme. There the insurer sued to retain the policy proceeds, claiming the policy to be void *ab initio*. The court applied New Jersey law and found the obtaining of the policy to be contrary to public policy and the insurance contract to be void *ab initio*. The New York legislature and courts under law applicable at the time show otherwise so the Sun Life holdings are not applicable to the present case.

The Estate also urges that judicial estoppel precludes any recovery by SPV as SPV knew of the funding of the premiums by other investors in 2010, and on that and other bases SPV and related entities brought an action in the Eastern District of New York. It is true that SPV knew that this transaction was a STOLI, but that was allowed under New York law at the time that SPV related interests purchased the Transamerica Life Insurance policy. There has been no showing of judicial estoppel.

For all of the above reasons, the Motion of the Estate for Reconsideration is denied. The Summary Judgment stands in favor of SPV dismissing the claims to the policy proceeds asserted by Third-Party Defendant Representative of the Estate of Nancy Bergman.

IT IS ORDERED:

1. That the Motion for Reconsideration on Motion for Summary Judgment of Third-Party Defendant Representative of the Estate of Nancy Bergman, Doc. 245, is denied.

Dated this 8th day of December, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
Deputy